UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LEVON MEGERDISH, | ) No. CV 08-06409-VBK |
| | ) |
| Plaintiff, | ) AMENDED MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

On June 30, 2009, Magistrate Judge Jennifer T. Lum issued a Memorandum Opinion and Order, and Judgment, remanding this case for further administrative proceedings in a manner consistent with the Memorandum Opinion and Order.

On July 9, 2009, the Commissioner filed a Motion for Reconsideration pursuant to Local Rule 7-18(c).

On July 14, 2009, the Clerk issued a Notice of Reassignment of Case Due to Unavailability of Judicial Officer. The matter was reassigned Case No. CV 08-06409-CJC (VBK).

On September 4, 2009, Plaintiff filed his Reply to the Commissioner's Motion for Reconsideration ("Reply").

Pursuant to 28 U.S.C. §636(c), the parties have consented to proceed before United States Magistrate Judge Victor B. Kenton.

**I**

**FACTUAL BACKGROUND**

In the Joint Stipulation ("JS") filed by the parties, Issue No. 3 addressed, "Whether the Administrative Law Judge ("ALJ") erred in the assessment of Plaintiff's mental limitations." As briefed by Plaintiff, the State Agency physician, Dr. Gregg, completed a Psychiatric Review Technique form ("PRT"). (Administrative Record ["AR"] 378-391.) In the PRT, Dr. Gregg found "moderate" limitations in the following areas: social functioning, and concentration, persistence or pace. (AR 386.) In a Mental Residual Functional Capacity form, Dr. Gregg assessed moderate limitations in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; and ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 389-390.)

Plaintiff also received a consultative psychiatric evaluation ("CE") from Dr. Woodard, on August 18, 206, at the request of the Department of Social Services. (AR 374-377.) Dr. Woodard arrived at the following conclusion:

> "Impairments are slight for withstanding normal stresses and pressures in the workplace, for interacting with supervisors, coworkers and the public, for maintaining

1        concentration and attention and for performing detailed,
2        complex tasks <u>and none for performing simple, repetitive</u>
3        <u>tasks</u>.  Incapacity is none for working on a continuous basis
4        without special supervision and slight for completing a
5        normal workweek without interruption."
6   (AR 376.)(Emphasis added.)

8        The ALJ agreed with Dr. Woodard's conclusion that Plaintiff has
9   the ability to perform simple, repetitive tasks, but, in consideration
10  of Dr. Gregg's mental residual functional capacity assessment, found
11  Plaintiff to be "slightly more limited, as asserted by [Dr. Gregg],
12  who considered and evaluated the entire medical evidence including the
13  findings and decision of the prior Administrative Law Judge decision
14  dated April 6, 1999, ..." (AR 20.)
15       At the hearing before the ALJ held on March 19, 2008 (AR 35-87),
16  testimony was taken from a vocational expert ("VE").  The ALJ posed a
17  hypothetical question to the VE which assumed both a physical residual
18  functional capacity ("RFC"), and a mental RFC of an ability to perform
19  simple repetitive tasks. (AR 77.)  The VE responded that Plaintiff
20  would not be able to perform any of his past relevant work, but could
21  perform work in the regional or national economy, which the VE
22  identified. (AR 42.)
23       The VE was also examined by Plaintiff's attorney at the hearing.
24  The attorney attempted to ask a hypothetical question which posited
25  additional limitations of moderate difficulties and ability to
26  maintain concentration, persistence and pace; however, the ALJ would
27  not allow the question "unless you phrase it in vocationally relevant
28  terms.  In other words, how it affects the work, the actual work

1  performed." (AR 81.)  Plaintiff's attorney argued that these
2  limitations (that is, moderate limitations in mental functional areas)
3  had been found by Dr. Gregg, which the ALJ acknowledged. (Id.)  The
4  ALJ differentiated Dr. Gregg's PRT, noting that, "It's utilized to
5  [sic] purposes of a clinical assessment.  It's not used for functional
6  capacity assessment.  Functional capacity assessment is listed in
7  [Exhibit] BF9, 3, where the [Plaintiff] is ... limited to simple
8  repetitive tasks." (AR 82.)

9      In response, Plaintiff's counsel again attempted to pose a
10 hypothetical question which posited moderate limitations and ability
11 to maintain attention and concentration for extended periods of time
12 and a moderate limitation in the ability to complete a work day and
13 work week without interruptions from psychologically based symptoms.
14 The ALJ again interrupted and would not permit this hypothetical
15 question, noting, "The same, the same problem, counselor." (AR 83.)
16 The ALJ noted that such limitations were "not vocationally relevant,
17 so I'm not allowing this vocational expert to answer any questions
18 which are phrased in that terminology, whether it's moderately
19 limited, markedly limited or anything in that regard." (AR 83.)

20     Despite this, the attorney persisted, and posited the following
21 hypothetical:

22     "Q   Assuming that a moderate limitation would preclude an
23        individual from performing the task one-third of the day, if
24        you have an individual who in [sic] not able to maintain
25        attention and concentration for a third of the workday and
26        who is not able to complete a normal workday and workweek
27        without interruptions from psychologically based symptoms
28        and to perform on a consistent basis without an unreasonable

```
 1                    number of rest periods, and again, that will be one-third of
 2                    the day or one-third of the week.  Would such an individual
 3                    be able to perform the four jobs identified in response to
 4                    the first hypothetical?
 5            A       Let me be clear.  You're saying the person would be off task
 6                    a third of the work day?
 7            Q       Moderate.
 8            A       Yes.   In  that  instance,  a  person  wouldn't  be  able  to
 9                    maintain that employment.
10            ALJ: Or any other work.
11            VE:  Or any other employment.  You're right, Your Honor."
12    (AR 84.)
```

    Thus, as framed by Plaintiff in the JS, the ALJ's error was to omit from his hypothetical, or refuse to allow Plaintiff's attorney to include in her own hypothetical, the moderate limitations found by Dr. Gregg in Plaintiff's ability to maintain concentration, persistence or pace, or in social functioning. (See JS at 14.)  Plaintiff's third issue thus included the assertion that the hypothetical question as posed by the ALJ to the VE was incomplete in that it did not include all of the claimant's limitations. (See JS at 14, quoting language from Nguyen v. Carter, 100 F.3d 1462, 1466 (9th Cir. 1996).

   **A.   Memorandum Opinion and Order**.

    In Judge Lum's Memorandum Opinion and Order, she found merit to Plaintiff's third issue.  She noted that the ALJ had accepted Dr. Gregg's assessment of Plaintiff's mental functional limitations (Memorandum Opinion at 5, citing AR at 21.)  Judge Lum found error in

the fact that the ALJ failed to include Dr. Gregg's "assessed limitations in the hypothetical question he presented to the vocational expert and in his assessment of Plaintiff's residual functional capacity." (Memorandum Opinion at 5.) Judge Lum noted that "the residual functional capacity assessments made by State Agency medical or psychological consultants ... are to be considered and addressed by the ALJ in the decision as medical opinions from non-examining sources about what the claimant can still do despite his or her impairments. SSR 96.6p." (Memorandum Opinion at 6-7.)

**B.  Motion for Reconsideration.**

The Commissioner has asked the Court to reconsider Judge Lum's Memorandum Opinion and Order based on Local Rule 7-18(c), which permits reconsideration, <u>inter</u> <u>alia</u>, upon a "manifest showing of a failure to consider material facts presented to the Court before [the Court's] decision."

The basic argument put forward by the Commissioner is that the ALJ was under no obligation to include these moderate limitations described by Dr. Gregg because they were relevant to the Step Two and Step Three analysis, but not to a determination of Plaintiff's RFC at Step Four, or his ability to perform work at Step Five.[1]

**C.  Applicable Law.**

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among

---

[1] The Court will not repeat the outline of the five-step sequential evaluation process, which is described by Judge Lum in her Memorandum Opinion and Order. (<u>See</u> pp. 4-5.)

other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[2]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as

---

[2] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations provide categories for the first three of these four functional areas. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(4)). In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

Dr. Gregg's findings and conclusions in the PRT (e.g., with regard to moderate limitations in two areas) are relevant to the Step Two and Three analysis of whether Plaintiff has a severe mental

impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.)  The discussion in Listing 12.00, "Mental Disorders," identifies this crucial distinction.  Thus, it is there stated as follows:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p again makes the same point about the distinction between a rating of mental severity at Steps Two and Three, and a determination of an individual's mental RFC at Step Four.

**D.   Analysis**.

At the hearing, the ALJ attempted to maintain the critical distinction between severity assessments in the PRT, and the RFC

9

assessment at Step Four of the sequential evaluation process. Thus, overruling the attorneys' attempted hypothetical which would include the severity limitations, the ALJ stated, "It's not used for functional capacity assessment." Further, the ALJ noted that, "... after assessing these psychological factors, [Dr. Gregg limited Plaintiff] to simple repetitive tasks." (AR 82.) The ALJ had earlier attempted to establish the same demarcation, telling the attorney that his questions would not be allowed unless phrased "in vocationally relevant terms." (AR 81.)

    The assessment of Plaintiff's mental RFC as including his ability to do simple, repetitive tasks is consistent with and supported by all of the psychiatric evidence, which includes Dr. Woodard's CE, and Dr. Gregg's PRT. The Court does not accept Plaintiff's argument that the omission of Plaintiff's mental functional limitations, which were relevant only in assessing severity and whether Plaintiff had a Listing level impairment, is not only erroneous, but would render the opinion of the State Agency reviewing physician "virtually irrelevant in the determination of Plaintiff's RFC, ..." (Plaintiff's Reply at 2.) Moreover, with due respect to Judge Lum's conclusions, the ALJ did not ignore Dr. Gregg's analysis, but in fact adopted it. Simply put, the ALJ had no obligation to insert into any hypothetical question to the VE the existence of moderate limitations in certain of the four mental areas which are relevant to assessment of severity. Plaintiff also seems to imply that an ability to perform simple or repetitive tasks is not an adequate description of a mental residual functional capacity. (Plaintiff's Reply at 3.) Plaintiff cites no cases, regulations, or SSRs in support of this conclusion. As such, the Court is constrained by the plain language of these regulations

and SSRs, which, indeed, do not equate the degree of limitation in these four areas with an individual's mental RFC.

In addition, the Court agrees with the Commissioner's contention that, at the hearing, the attorney's definition of moderate limitations as constituting a particular fractional inability to perform certain tasks, is not supported by regulations or applicable SSRs. Indeed, the term "moderate" is not defined by the Listings. There, a definition is ascribed only to the term "marked," which is utilized in the B Criteria as setting the standard for a Listing level impairment:

> "It means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [claimant's] ability to function independently, appropriately and effectively, and on a sustained basis."

20 C.F.R. §404, Subpt. P, App. 1, Rule 12.00.

Thus, the fractional limitations posited by Plaintiff's counsel to the VE were not supported by any of the record evidence, nor is there any definition of "moderate" contained in the regulations which would lead to that definitional assessment. As such, the hypothetical question falls short of the well-established requirement that it must reflect each of the claimant's limitations as supported by the evidence. See Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

For the foregoing reasons, the Court determines that the

Commissioner's Motion for Reconsideration is meritorious. The ALJ did not commit any error in assessing Plaintiff's limitations; in the hypothetical questions he posed to the VE; or in overruling the proposed hypothetical questions set forth by Plaintiff's counsel.

Since Judge Lum did not find any error in the other issues raised by Plaintiff and the parties in the JS, and since the parties have not asserted any other error, it necessarily follows that the Court will affirm the decision of the Commissioner, and that the Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: October 2, 2009           /s/
                        VICTOR B. KENTON
                        UNITED STATES MAGISTRATE JUDGE